Technologies, Mr. Shunk. May it please the Court, good morning. If I may, I'd like to turn first to the issue of whether or not there is an ambiguity in the 2001 assignment that should have caused the Court to consider the evidence that was proffered by Euclid to argue that the 2001 assignment was a failure. The 2001 assignment, in fact, did not transfer the 742 patent to Vector. The ambiguity, Your Honors, is a classic one that this Court sees many times in patent cases, and that is the lack of an antecedent. The specific assignment at issue in this case transfers a specified U.S. patent and four applications, and then continuations in part which may issue for said invention. Unfortunately, for anyone who reads the 2001 assignment, there is no reference to invention, the word, prior to the time that the phrase said invention appears in the assignment. But the assignment is very clear. It assigns not patents on stated subject matter, lithium nitrate, lithium bromide, or whatever. It assigns a patent and CIPs, and the 742 patent is a CIP, QED. What's ambiguous about that? Because, Your Honor, as a continuation in part, the 742 patent actually had claims that go to an invention that is not the invention set out when the single patent, the 553, is described in the testament. Well, who claimed that as a CIP? I'm sorry? Who claimed that as a CIP? Well, Mr. Bennett. Obviously, that's right. You're Asinor, or they're Asinor. As Your Honor knows, a continuation in part by its very nature adds new material. Sometimes the claims in a continuation in part can go to the original invention, in which case the original bar date would apply. But sometimes those claims can go to the new invention in this patent. And if I could take a minute or two to discuss the two different inventions, I think Your Honors will see that in this particular case, this is not a genus, original patent, and then species continuation in part. This is a continuation in part in which there are two very separate inventions that overlap as to certain elements. And it goes like this, Your Honor. The original invention was directed to what is called metallized zinc anodes, which is a zinc that is heated to a liquid state and then sprayed onto concrete. The invention claimed the use of certain humectant chemicals in order to effectuate that metallized zinc anode in a galvanic cathodic protection system. Mr. Shrum, let me ask you. That assignment wasn't recorded, right?  Do you have a stronger argument on the BFP point? I think they're both good, Your Honor. But you're sort of pushing off to second place if they're. I would be happy to address the bona fide purchaser issue now and come back to the claim construction issue. The bona fide purchaser issue catches the court on the horns of a dilemma. And that is what the court has done here is sua sponte, declared that we abandoned an argument. In other words, the court had before it simply the briefs of the parties and then advised us that it read our brief and it believed that we had abandoned the argument by citing the place in our brief where we actually referred to that issue. You mean the educational footnote? That's what the court called it, Your Honor. The reality is that this case was a long-fought one for several years about patent infringement. But at the end of the day, the patent holder at issue dropped all of its claims of patent infringement. And I believe that the court was looking for a way to put a neat bow around the entirety of the matter and declare the case over and done with. But in the effort to declare these claims, in particular the bona fide purchaser claim, to have been abandoned rather than simply to have considered whatever evidence the court deemed appropriate on it, the court overstepped what it should have done in the case. With respect to the ambiguity issue, just to touch back on that briefly, isn't the real question whether an issued patent can still be properly considered an application? I think there are two issues. That certainly is one of them that applies to the 742 patent. But at the time of the assignment, the 742 patent had already issued. It had and the assignment was for continuations in part which may issue, suggesting a futurity in that regard. I should say, however, that I would encourage this court as well to consider the other reason why there is an ambiguity, the foresaid invention language, because there are patents that are not at issue in this case. There are quite a few continuations in part. And it is our position that any claim of a continuation in part that goes to the puck anode technology as opposed to the metallized zinc anode technology was not transferred in this case. And that's why it's very important to us that the error that was made by the trial court below be remedied. As I was explaining, the metallized zinc is a spray-on process for use with the humectant chemicals. The puck is a solid piece of zinc. But are you saying that the language said invention refers to the specific use of the anodes? It refers, Your Honor, and I'm looking at joint appendix page 114, which is the first place the assignment appears. Right after the identification of the only issued patent, the 553, the assignment says, this patent claims the specific use of lithium nitrate and lithium bromide to enhance the performance of metallized zinc anodes. Right, but there are other applications listed that presumably cover other inventions. Actually, they all cover metallized zinc. All of these, the number two, the application 292, number three, the application 248, those are continuation in part applications of the 553. And the Canadian and the EPO application are related foreign applications to it. All five, and unfortunately this is the kind of evidence we wanted to present to the trial court, all five of these items are items that go only to metallized zinc used with humectant material. And that is what these parties intended that Mr. Bennett would be transferring to Vector. And that is why that language appears there. Now, I'm sorry, Your Honor. So I'm trying to understand how much weight you think should or should not be put on the prior issuance of the 742. I think that that alone would justify sending this back to the trial court. But I believe that there is an additional reason to send it back, and that is not only was it improper to declare it transferred when it had already been an issued patent, but also this assignment is limited to the assignment of metallized zinc claims, not to puck anode claims. The evidence that we had of the activities of the parties prior to the signing of the patent assignment, as well as after it, was overwhelming. Mr. Bennett had made a proposal in which he proposed to transfer only the metallized zinc. We have a concurrent patent assignment agreement that generated this patent assignment that also refers to the transfer of these five items, also uses the words about metallized zinc, but has no reference at all to continuations in part in it. After the time of the assignment, Mr. Bennett paid for the issue fee on the 742 patent as late as three years after the parties had already executed this patent assignment agreement. Mr. Whitmore offered to assist Mr. Bennett in finding a licensee of the 742 patent long after this patent assignment was executed. These parties did not believe, neither one, that the 742 patent had been assigned until in late 2004 Mr. Whitmore's attorneys created the argument that you see for you today that in fact the 742 patent was assigned. And it was improper for the court to allow that to go forward on summary judgment under Ohio law, particularly the Inland Refuse case, which we cite in our brief. Now, Mr. Schenkel, what are the consequences of your appeal? If you prevail, you've told us that there are no outstanding infringement issues. Is that right? So what are we arguing about? There are no outstanding infringement issues with regard to the patents at issue. However, the 742 patent, if it were to belong to Mr. Whitmore instead of us, as the court has ordered, would inhibit us at a time in the future if we chose to practice that particular patent. We don't believe that we have a product right now that practices that patent, but we believe that we are the rightful owner of the patent and that we should have the right in the future to create a product that practices that patent if we wish. We also want it to be clear that any other continuation in part that does not deal with metallized zinc anodes and properly continues to be our patent so that we will not be paying the issue fees for it in vain and doing additional research work with regard to those other CIPs in vain. The decision that Judge Boyko issued had implications far beyond the infringement claims that were pending before him at the time, and in part, that's what we seek to protect. Okay. Thank you, Mr. Shull. Mr. Taylor. Good morning, Your Honors. It pleased the court. I would like to address first the bona fide purchaser for value argument that you had mentioned. There was a motion for summary judgment on the ownership of the 742 patent that was filed by Vector Corrosion Technologies Limited and David Whitmore, and that motion was based on count one of the counterclaims, the first counterclaim, stating that Vector Corrosion Technologies Limited was the owner of the 742 patent. Now, faced with that motion for summary judgment of ownership, it was incumbent on Euclid to make whatever arguments it had that, in fact, it was the owner. Did one have to make every possible motion on every possible ground for summary judgment? Because if one wins on one count, that's enough, and if one loses, one can go to trial on the other. I mean, what if you don't make a motion for summary judgment if you think there were genuine issues of material fact on a particular ground, or you shouldn't? Yes, but this was an argument that was in Claim 7 of the complaint that Euclid was a bona fide purchaser for value of the patent. This argument should have been made to rebut the argument that Vector Corrosion Technologies Limited was the owner. It didn't appear in all the papers.  It appeared in the complaint. Yes, it was Count 7 of the complaint. And didn't it appear in the response to the summary judgment motion? No, Euclid chose not to make that argument. In fact, if you look at 1189 of the joint appendix, you see that that argument in its entirety, which is simply a statement that Vector did not record the assignment, and then a footnote stating that the statutory consequences for not recording an assignment. There is no statement anywhere that Euclid is a bona fide purchaser for value. But your motion for summary judgment was as to ownership, not with respect to the bona fide purchaser count, correct? That's true. It was with respect to ownership. And the bona fide purchaser allegation was set forth as a separate allegation, along with an allegation with respect to ownership in Count 7 of the complaint. Yes, that is correct. So where is there any obligation for a plaintiff to file a summary judgment motion on every allegation in every count? No, it's not a matter of it not filing a motion for summary judgment on that claim. It's a matter of it not even raising the argument, of it waiving that argument. But why would it waive an argument simply because it didn't choose to file a motion for summary judgment? It didn't waive the argument because of that? It did not waive the argument because it did not choose to file a motion for summary judgment. It waived the argument because it did not make the argument in response to a motion for summary judgment that Vector Crowson You didn't argue it required a response, isn't that correct? You didn't argue that? That wasn't your issue. The issue was ownership. You're confused on who's who here. The issue was ownership of the 742 patent. Right, okay. And the point that I'm making here is that Euclid had a claim that it was the owner of the 742 patent. Who moved the summary judgment? Vector Corrosion Technologies Limited. Is that you? Yes. All right, then he needed to respond only on the points that you raised. All right. I would submit that the argument was waived because if you're faced with a motion for summary judgment of ownership and you did not make an argument as to why that motion should not be granted that is there, that is purportedly there, that you've waived that argument. But there are two different things going on here. One is ownership and one is bona fide purchaser for value defense under the statute. You filed a motion for summary judgment as ownership and Euclid contested that motion. But that doesn't obligate Euclid to file its own motion for summary judgment on the bona fide purchaser for value issue. No, that's true. And that's not my argument. My argument is that it waived its argument by not using that argument in response to a motion for summary judgment. But moving on to- I don't think that's a basis for a waiver. Well- When you just said- Well, go ahead. Okay. Moving on to a point that I believe you raised about the issued patent. If you look at the assignment, the assignment assigns the issued patent, the U.S. applications, and then it says any and all divisional applications, continuations and continuations in part together with the entire right title and interest and in two set applications. Any and to all divisional applications, continuations and continuations in part thereof. And then it goes on to say and any and all letters, patents, which may issue or be reissued. The assignment clearly contemplates not only continuation in part applications,  Your opponent, though, calls attention to the fact that when the assignment stated the issued U.S. patent, it then explained that the patent claims the use of lithium nitrate and bromide to enhance the performance of metallized zinc anodes. So his point is that that qualified the assignment with respect to a stated number, qualified it and sort of limited it to claims to lithium nitrate and bromide. Well, actually, that is not the argument that counsel is making, and counsel does not make that argument because counsel knows that that argument can't be made because counsel referred to the other applications that were assigned and said they all involved metallized zinc technology, did not cite the support in the record. But if the extrinsic evidence is examined, it's seen that they do not involve lithium bromide and lithium nitrate. They're not limited to lithium bromide and lithium nitrate. And so what counsel has done is at first it would seem that counsel has almost adopted the same interpretation as the court that forced that invention relates to that particular patent, 553, what is disclosed in that patent, what is claimed in that patent, or as counsel would argue, what is described. But counsel then makes a leap beyond that and says that actually what is intended, and there is no support for that argument anywhere in the four corners of the agreement, but counsel is making the argument that in fact the assignment is limited to one aspect of that description, which is the metallized zinc technology. And again, that argument is based entirely on the improperly argued extrinsic evidence. You say improperly argued? The problem is that extrinsic evidence was not permitted. I think that the obligation of counsel is first to show that there is an ambiguity. Is there an ambiguity on its face? This is a continuation in part, but it was an earlier issued patent. Isn't that on its face confusing? No, because the assignment not only assigns continuation in part applications, but also continuations in part. It not only assigns patents that may issue, it also assigns patents that may be reissued. It clearly contemplates patents that already exist and continuations in part that already exist. But it doesn't say that. This is sort of standard language, is it not? If that's what's supposed to be included, let's say a reissue of a patent that otherwise is clearly not included, that would be quite different from this situation. I'm just looking at the plain language. The agreement doesn't say any letters patent which may have issued. It says any and all letters patents which may issue or be reissued. It doesn't say which may have already issued, does it? But it says reissued, which of course means already issued patents. But this one wasn't reissued, was it? No. No, it wasn't. But again, also it states that it continuations in part. It doesn't just say continuation in part applications. You see that there's a repetition here which says continuation, right title and interest, any and to all divisional applications, continuations, and continuations in part thereof, referring back to the listed patent and applications. This assignment was recorded in the Patent Office just 21 days after it was signed. It was recorded with respect to the 553 patent. As I understand it, it was never indexed against the 742 patent. Is that correct? That is correct. Is there any reason why it would not have been indexed against the 742 patent, if indeed that's what was intended? My understanding is that a patent number has to be specifically listed in an assignment to be recorded. So with respect to the 742 patent, there's no way you could ever have recorded this assignment? What would normally happen is that you would ask for- No, what would normally happen is that you would request an assignment specifically of the listed patent of the 742 patent. And you didn't do that either? No, the claim was-we weren't aware of the patent. And the first time in the record that the claim of ownership is raised is in the letter that was written by the Canadian agent in 2004. And the response to that by Euclid was to prepare a confirmatory assignment of an alleged November 15, 2004, written exclusive license agreement. And it was a written agreement. It's stated in the claims and stated in the confirmatory assignment, what is set forth, allegedly set forth, I should say, in the 2004 exclusive license. This confirmatory assignment was executed the day before the complaint was filed. You're telling us in the exclusion of evidence, the extrinsic evidence would have shed light on these transactions? The extrinsic evidence- I'm thinking really more in terms of the complaint itself, which relied on the 2005 confirmatory assignment but did not attach the alleged written exclusive license, which would have been essential because the confirmatory assignment was prepared after receipt of the cease and desist letter from the Canadian agents. I think that there is some confusion over foresaid invention. It seems that it's not clear exactly what kind of argument is being made, but there is some effort to limit the assignment somehow to what is described with respect to the 553 patent. And that is not supported at all by the assignment itself. This Court has held on a number of occasions that a CIP is a different invention, but it's still- if it's included in the assignment, then it's assigned. And the fact that the singular form was used does not have any effect on this because foresaid invention, the ordinary meaning of foresaid invention is as a result of said invention or following from said invention, like the phrase jumping for joy, jumping as a result of joy. So in no way should this assignment be interpreted to being limited somehow to one invention. It couldn't be, of course, because it clearly assigns more than one invention, includes applications, includes continuations in part. And- Okay, Mr. Taylor, we're over time. I think we have the arguments. Thank you. If we can explore them. Mr. Schell. Your Honors, counsel's argument that we just heard is evidence of why Judge Boyko should have heard all of the evidence in this case rather than granting summary judgment. Judge Boyko himself struggled with what said invention meant, and he chose to turn to this court's decision in the Inova case and his own reading of what he believed a continuation in part was in order to try to construe the phrase foresaid invention. You've heard some discussion about whether or not the four listed applications in the assignment are applications for metallized zinc or for puck anodes. This amounts to the court and to counsel struggling to try to find a meaning for the phrase foresaid invention. Judge Boyko should have allowed us to put all that evidence on so that you could hear the full story of what the difference between the technologies were, what exactly the claims in each of these patent and patent applications would be. We feel very strongly that if you were able to hear that evidence, you would see that the intent of both parties in this case was to assign the invention of using humectant materials with metallized zinc and not to assign the puck technology, and that, in fact, that is why the 746 patent, even though it had issued, was not included on this list because it was a metallized zinc technology patent and was never intended to be assigned. I was surprised to hear, Your Honors, that counsel says that Mr. Whitmore was not aware of the existence of the 742 patent, and that's why perhaps the assignment was not recorded of record against the 742 patent. The 742 patent, Your Honors, was in existence at the time that the 2001 assignment was executed, an assignment which goes to the point of specifically listing related foreign applications and several other existing continuation applications. I can't tell you that the record reflects that Mr. Whitmore did, in fact, know or didn't, in fact, know about the 742 patent. One would certainly think that he had very good reason to know about it, but that's the kind of thing that the Court would hear if the Court were to allow Judge Boyko to hear all of the evidence in this case and make a decision on the facts rather than upon the judge's own reading of what he believed foresaid invention might mean. In Ohio, the only bar that we need to meet in order to permit parole evidence to be introduced is to show that reasonable minds could differ over what the meaning of the contractual term might be. That's the Inland Refuse case. And in this case, I think it's apparent that reasonable minds do differ over what the effect of that foresaid invention and the continuations that may issue, that those words are vague. Reasonable minds can differ. That alone permits us to provide our evidence that we proffered. That's what Judge Boyko should have heard. Unless the Court has any other questions, those are my arguments. Thank you very much. Thank you, Mr. Schenke. Mr. Taylor, the case is taken into session. All rise. The Honorable Court is adjourned until tomorrow morning at 10 a.m.